UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

DANIELLE A.[1],                        )
                                       )
            Plaintiff,                 )
                                       )
    v.                                 )        CIVIL NO. 1:20cv315
                                       )
ANDREW M. SAUL,                        )
Commissioner of Social Security,       )
                                       )
            Defendant.                 )

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for Supplemental

Security Income (SSI) under Title XVI of the Social Security Act. Section 205(g) of the Act

provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the

transcript of the record including the evidence upon which the findings and decision complained

of are based. The court shall have the power to enter, upon the pleadings and transcript of the

record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the case for a rehearing." It also provides, "[t]he findings of the

[Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42

U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant has not engaged in substantial gainful activity since September 28, 2017, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: epilepsy, attention deficit hyperactivity disorder ("ADHD"), and autism spectrum disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: can never climb ladders, ropes, or scaffolds; occasional balancing; must avoid all exposure to unprotected heights, operation of motor vehicles, and working around or operation of dangerous machinery with moving parts or sharp blades; can understand, carry out and remember simple, routine, and repetitive tasks with no production rate pace like assembly line work with only occasional simple work-related decision making; can maintain attention and concentration for two-hour segments; could respond appropriately to occasional predictable changes in the workplace; could have frequent interactions with supervisors apart from what is necessary for general instruction, task completion, or training and occasional interactions with coworkers and the general public.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on June 23, 1998 and was 19 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since September 28, 2017, the date the application was filed (20 CFR 416.920(g)).

(Tr..17 -29 ).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on April 23, 2021. On June 4, 2021 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on June 17, 2021. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

Plaintiff was born on June 23, 1998. (Tr. 40). She graduated from high school in 2017 with

a General Diploma. (Tr. 84). Plaintiff could not receive a Core 40 Diploma because she was unable to pass Geometry and Algebra II. (Tr. 314). Plaintiff has never worked a full-time job and she has only ever lived with her parents. (Tr. 40-41). Plaintiff has been told she cannot drive due to her seizure disorder and has never had a license. (Tr.218).

Plaintiff's birth was complicated. The delivery was prolonged, and Plaintiff got stuck in the birth canal. (Tr. 483). She was delivered via emergency C-section and was deprived of oxygen for a period of time. (Tr. 370). Forceps were used prior to surgery, and no heartbeat could be found for approximately five minutes. (Tr. 286). After her birth she was in the hospital for six days. (*Id.*). Plaintiff walked after 14 months and spoke her first words at the age of one. Plaintiff reached other developmental milestones on target. (Tr. 286, 319). As a child Plaintiff struggled in school both emotionally and academically. (Tr. 294-301). At age seven Plaintiff was diagnosed with Cyclothymic disorder with angry outbursts. (Tr. 294). Plaintiff's school psychologist wrote, "Plaintiff was referred for a psycho-educational evaluation by school personnel. They were concerned about Plaintiff's difficulty in handling her anger, poor social interaction skills, refusal to respond to adult directives, refusal to work, and her aggressive tendencies toward peers and staff." (Tr. 319). Plaintiff was later diagnosed with the following: Autism Spectrum Disorder - Asperger's Syndrome (Tr.359); Epilepsy, (*Id.*); Attention Deficit Hyperactivity Disorder (ADHD) (Tr. 347); and Migraines. (*Id.*).

As a child Plaintiff had frequent seizures. (Tr. 370, 445, 483). After a physician witnessed one of Plaintiff's "staring spells," she was diagnosed with absent seizures and an EEG confirmed generalized epilepsy. (Tr. 483). She was able to be weaned off seizure medication when she was in high school. (Tr. 370). However, in September 2017 Plaintiff had a grand mal seizure and was put

back on Lamictal and Keppra. (Tr. 385, 423). In addition, Plaintiff has had Transient Alteration of Awareness. (Tr. 359). She is on several medications for her issues which include: Sumatriptan for migraines (Tr. 347); Concerta (Methylphenidate) for ADHD (*Id*.); Keppra for Epilepsy (Tr. 360); Trazadone for sleeplessness (Tr.196); and Lamictal for seizures (Tr. 233).

In support of remand, Plaintiff presents three main arguments. Plaintiff alleges that the ALJ did not properly consider the opinion of a consultative examiner and a State agency psychological consultant. She asserts that the ALJ did not properly evaluate her parents' statements and testimony. Plaintiff further argues that the ALJ erred in considering evidence concerning migraines and seizures and when assessing her residual functional capacity (RFC).

The record before this Court shows that substantial evidence supports the RFC finding. The RFC is an "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *2 (S.S.A.). The "RFC is not the least an individual can do despite his or her limitations or restrictions, but the most." *Id*. at *1; *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. § 416.945(a) (1). An ALJ assesses a claimant's RFC based on all of the relevant evidence in the claim file at the time he or she makes a decision, including the objective medical evidence, medical source opinions and observations, and a claimant's own statements about her limitations. SSR 96-8p. Although the ALJ is responsible for assessing a claimant's RFC, the claimant has the burden of showing how her impairments limit her functioning. *See* 20 C.F.R. § 416.912(a)(1); *see also Abbett v. Berryhill*, No. 1:17-CV-232-TLS, 2018 WL 3018967, at *5 (N.D. Ind. June 18, 2018) (holding that the plaintiff has the "burden to come forward with evidence of her limitations.").  As part of the ALJ's

evaluation of Plaintiff's RFC, she considered the medical opinions and prior administrative medical findings in the record (Tr. 18-27). Plaintiff challenges the ALJ's assessment of opinions provided by a consultative examiner, Stefanie Wade, Psy.D., and a State agency psychological consultant, Donna Unversaw, Ph.D.

For claims filed on or after March 27, 2017 – such as Plaintiff's claim here – an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from medical sources (Tr. 22). 20 C.F.R. § 416.920c. When a medical source provides one or more medical opinions, an ALJ will consider those medical opinions from that medical source together using the following factors, as appropriate: supportability, consistency, relationship with the claimant, length of the treatment relationship, specialization, and other factors (such as evidence showing that the medical source has familiarity with other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements). 20 C.F.R. § 416.920c(a), (c)(1)-(c)(5). The most important factors to consider when evaluating the persuasiveness of medical opinions are supportability and consistency. 20 C.F.R. § 416.920c(a).

Here, the ALJ discussed Dr. Wade's consultative examination report dated January 8, 2018, and explained why she found some aspects of Dr. Wade's opinions to be persuasive, while others were not (Tr. 19-20, 23-24, 26). First, the ALJ considered Dr. Wade's opinion that Plaintiff would need some support from others to accomplish appropriate daily tasks (Tr. 23, 371-73). The ALJ found Dr. Wade's opinion in this regard somewhat supported by statements indicating that Plaintiff's daily activities appeared to be simple, her daily routines appeared to be somewhat established, her understanding appeared limited at times, and she had poor concentration and a

low frustration tolerance (Tr. 23, 25, 371-73). But the ALJ also discussed evidence that was inconsistent with the opinion (Tr. 19). For example, the ALJ pointed to Dr. Wade's own report indicating that Plaintiff was appropriately dressed and had adequate grooming and hygiene (Tr. 19, 23, 372-73). Additionally, Plaintiff denied problems with showering, bathing, and dressing; she could bake and prepare light meals; she could do light cleaning; she played videogames; and she had hobbies, including knitting and taking photographs (Tr. 25, 43-46, 58, 215-26, 238-40, 395-96). This substantial evidence supports the conclusion that Plaintiff could appropriately handle her daily tasks. Ultimately, the ALJ found that Dr. Wade's opinion was not persuasive when viewing the record in its entirety. (Tr. 22-23, 25).

Second, the ALJ found Dr. Wade's opinion that Plaintiff had an impaired ability to sustain efforts persuasive, as it was generally consistent with the evidence (Tr. 23). 20 C.F.R. § 416.920c (c)(2). Dr. Wade noted that although Plaintiff was somewhat inattentive to tasks, she put forth a good effort during the evaluation (Tr. 19, 23, 372-73). During the mental status examination, Plaintiff could not subtract seventeen cents from one dollar, she was not sure how a sock and a shoe were alike, and she had limited insight into her behaviors and the consequences of her behaviors (Tr. 19, 23, 372-73). The ALJ also recognized testimony that Plaintiff becomes frustrated and loses her temper when her routine is interrupted (Tr. 26, 50). To accommodate these difficulties, the ALJ's RFC finding limited Plaintiff to work that was simple, routine, and repetitive in nature, with no production rate pace (such as assembly line work), with only occasional simple work-related decision making (Tr. 22). Furthermore, to address evidence concerning inattentiveness, the RFC finding limits Plaintiff to work at unskilled task complexity, while maintaining attention and concentration for two-hour segments (Tr. 25). The RFC also

limited Plaintiff to occasional predictable changes in the workplace (Tr. 22).

The ALJ also found Dr. Wade's opinion that Plaintiff was likely to have difficulty with social interactions persuasive when viewing the record as a whole (Tr. 26, 373). Dr. Wade's report notes that Plaintiff exhibited a nervous mood, made poor eye contact, and seemed to struggle to carry on a conversation (Tr. 19, 23, 372). Although the Dr. Wade's report indicates that Plaintiff was irritable towards her mother during the examination, the report also documented that Plaintiff was cooperative and interacted appropriately with Dr. Wade (Tr. 26, 372). The ALJ also recognized statements from Plaintiff's parents discussing her interactions with others (Tr. 20). For example, the mother indicated that Plaintiff was not invited to many social events and her friends were younger than she was (Tr. 20, 371). The father testified that Plaintiff had problems dealing with people in general (Tr. 20, 67).

The ALJ observed that Plaintiff's remote records from 2006 indicate a history of behavioral problems, but Plaintiff's May 2017 IEP reflects that she no longer had behavioral problems, and mental status examinations do not establish that Plaintiff had significant limitations with interactions (Tr. 26, 289-90, 314). The IEP notes that she "butted heads" with a student teacher in her math class (Tr. 26, 316). But other records show that she actively participated in classroom discussions, and she was described as responsive, respectful, and kind (Tr. 26, 306-09, 313-14). Plaintiff also participated in theatre activities and the Indiana Academic Spell Bowl while in high school (Tr. 26, 42-43, 306).

To address Plaintiff's social issues and to avoid stressors that would aggravate her symptoms, the RFC limited Plaintiff to simple, routine, and repetitive tasks in a relatively static work environment, while restricting her interactions with others to frequent interactions with

supervisors apart from what is necessary for general instruction, task completion, or training, and occasional interactions with coworkers and the general public (Tr. 22, 26).

These limitations are generally consistent with the opinions of the State agency psychological consultant, Dr. Unversaw, who reviewed the records and determined that Plaintiff could do the following: understand, carry out, and remember simple instructions; make judgments commensurate with functions of simple, repetitive tasks; and deal with changes in a routine work setting (Tr. 90). Another psychological consultant, William A. Shipley, Ph.D., confirmed that notwithstanding Plaintiff's impairments, she was capable of performing unskilled tasks (Tr. 106). The ALJ found Dr. Unversaw's opinion most persuasive due to its overall consistency with Plaintiff's history and clinical findings from the period at issue (Tr. 23). 20 C.F.R. § 416.920c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). Substantial evidence in the record supports the ALJ's assessment (Tr. 18-27).

Plaintiff argues that ALJ erred in her evaluation of Dr. Unversaw's opinion. Plaintiff asserts that the ALJ was wrong to "rel[y] heavily on this report despite the fact that Dr. Unversaw has never met or evaluated [Plaintiff]".   However, the medical source's relationship with the claimant is one factor among many that an ALJ considers when evaluating the opinion evidence. *See* 20 C.F.R. § 416.920c(c). Plaintiff also argues that Dr. Unversaw's opinion is internally inconsistent based on comments that Plaintiff was dependent on her parents for support and has poor impulse control. However, Dr. Unversaw's "MRFC – Additional Explanation" indicates that those comments were from "Fxing reports," which likely refers to the Adult Function Report and

10

the Third Party Adult Function Report in the record (Tr. 90, 201-23). Although Dr. Unversaw acknowledged the allegations in those reports filled out by Plaintiff and her mother, she also considered the "totality of evidence in file" that was available to her when considering Plaintiff's limitations, including Dr. Wade's report, school records, and treatment records from a neurologist (Tr. 82-84, 90). Thus, contrary to Plaintiff's assertion, there was support in the record for Dr. Unversaw's opinion, and the ALJ did not err in finding it persuasive (Tr. 18-27).

Clearly, the medical and non-medical record provides more than a mere scintilla of evidence to support the ALJ's findings here. *Biestek*, 139 S. Ct. at 1154. Thus, the ALJ's evaluation of the opinion evidence does not warrant remand.

Plaintiff next challenges the ALJ's evaluation of her parents' statements and testimony. Consistent with 20 C.F.R. § 416.929 and SSR 16-3p, the ALJ considered evidence from Plaintiff's parents because non-medical sources such as family members can have valuable insight into a claimant's functioning. However, the ALJ is not required to accept such statements in their entirety or at face value. Rather, the ALJ is required to consider statements in light of the other medical and non-medical evidence of record. (Tr. 18-27). 20 C.F.R. § 416.929(c); SSR 16-3p, 2017 WL 5180304 (S.S.A.). Here, the ALJ found that the statements provided by Plaintiff and her parents were not entirely consistent with the medical evidence and other evidence in the record (Tr. 22).

Plaintiff relies on *Jayson J. v. Saul*, 2:19-cv-175-WCL, 2020 WL 597657 (N.D. Ind.), as support for her argument that the ALJ used the wrong standard when evaluating subjective complaints and that the ALJ "expect[ed] 'complete consistency' in the evaluation of the medical record to the testimony and other evidence". The regulations explain that the ALJ must issue a

written decision that gives the findings of fact and reasons for the decision. 20 C.F.R. § 416.1453. The ALJ must base her decision on the preponderance of the evidence offered at the hearing or otherwise included in the record. *Id*. (By contrast, on judicial review, the relevant standard is whether substantial evidence supported the ALJ's findings. *See* 42 U.S.C. § 405(g).) Here, the ALJ found that Plaintiff's allegations of subjective disability were "not entirely consistent with the medical evidence and other evidence" (Tr. 22). As the Commissioner points out, that was not an evidentiary standard. Rather, that was the ALJ's description of the consistency of Plaintiff's allegations. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. Apr. 23, 2021) (rejecting argument that the ALJ used a wrong standard when explaining that the allegations were "not entirely consistent," and stating that "[i]t is clear to us, given the context, that the ALJ merely used a polite way to say the weight of the evidence did not support all her claims").

Additionally, under the regulations, the ALJ is required to evaluate the degree to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 416.929(a). Here, the ALJ's discussion of the effects of Plaintiff's physical and mental impairments and the detailed RFC all reflect that the ALJ credited Plaintiff's complaints where they were supported by the evidence of record (Tr. 18-27).

Consistent with the regulation and SSR 16-3p, the ALJ reasonably considered the evidence in its entirety when evaluating the statements and testimony provided by Plaintiff's parents. By way of example, as the ALJ explained, the mother testified that she would not feel safe if Plaintiff lived independently due to her inattention, she gets distracted, she has left a hot curling iron on the bed, she has left the stove on after she made hot chocolate, and she had accommodations when she was in school (Tr. 20, 55-56). The mother told Dr. Wade that some of Plaintiff's cleaning efforts

12

at home were not successful (Tr. 23, 371-73). Although the mother informed Dr. Wade about and testified to Plaintiff putting dishes with food on them into the dishwasher, at the hearing, Plaintiff related that her chores included dishes, but sometimes she did not rinse food off the dishes due to textures or smells that made her gag (Tr. 25, 44, 53, 373). Plaintiff testified that she occasionally cleaned countertops, picked up her room, swept upstairs, and (consistent with her mother's testimony) sometimes needed to be reminded to do her chores (Tr. 25, 43-44, 58, 64). The mother testified that Plaintiff "struggles with showering and just overall cleanliness," but Plaintiff denied problems with showering/bathing/dressing (Tr. 25, 44-45, 58, 238-39). Plaintiff stated that her parents managed her medications, but she did not know of any problems that she would have if she managed them on her own (Tr. 25, 44-45, 238-39).

The ALJ acknowledged Plaintiff's mother's testimony that Plaintiff thinks she can do most things, but that the way Plaintiff does things is not necessarily how they should be done (Tr. 23, 53). The mother explained, for example, that Plaintiff thinks she is taking care of the dogs, but she is not really doing so (Tr. 20, 23-24, 54). The mother stated that Plaintiff will not put collars on the dogs, or she gets distracted and leaves the dogs outside (Tr. 20, 23-24, 54). The ALJ also acknowledged the mother's testimony that Plaintiff has gotten lost in public and she does not pay attention when crossing the street (Tr. 24, 54, 56). The mother also reported that Plaintiff is irritable when she is worried (Tr. 20, 371).

Plaintiff's father testified that Plaintiff could not live independently because she would have problems dealing with people in general, and he described Plaintiff as not observant (Tr. 20, 67-68). The father testified that Plaintiff is loud if she disagrees with someone and becomes agitated if someone tells her that she is wrong (Tr. 26, 67). As the ALJ noted, Plaintiff confirmed

that when her routine is interrupted, she becomes frustrated and sometimes loses her temper (Tr. 26, 50-51). She is also bothered when someone tells her what to do (Tr. 26, 50). However, when she is frustrated at home she will play games, or listen to music in her room for a while. (Tr. 25-26, 49-50).

Other records show that in terms of ability to maintain attention, Plaintiff watches dramas, horror shows, and crime shows on television, and does not have a problem watching them (Tr. 25, 45). She walks around the neighborhood trying to catch Pokémon, sometimes alone, and at other times with her boyfriend (Tr. 25, 45-46). Plaintiff reportedly does not go to the store by herself because she cannot drive, and because stores are "kind of crowded," though she admitted that she does not get frustrated in the store (Tr. 25, 46). She also testified that she loves reading, sometimes knits, plays Pokémon Go or other games on her phone, bakes cookies and brownies, and walks around outside to take photographs of flowers (Tr. 25, 45, 50).

The ALJ also considered the medical evidence. When evaluating Plaintiff's subjective complaints, the ALJ explained that she fully considered the allegations made by Plaintiff and her parents, but "when viewing the medical records from [Plaintiff's] own providers, such complaints … are not well-documented within providers' treatment records during the period at issue. Likewise, the clinical findings reflected within [Plaintiff's] own providers' treatment notes do not lend support to the … complaints, and consistent observations of inattention over multiple appointments are not documented" (Tr. 24). The ALJ noted that mental status examinations tend to reflect that Plaintiff remained fairly stable during the period at issue (Tr. 20). The ALJ acknowledged that Plaintiff's neurologist, Dr. Bultemeyer, recorded over multiple examinations that Plaintiff made poor eye contact (Tr. 19-20, 26, 359, 401, 405, 409, 418). But other mental

status examinations document that Plaintiff had normal judgment (Tr. 20, 351, 354, 382). In February 2019, Jamin Yoder, M.D., Plaintiff's primary care provider recorded the claimant was "doing well" (Tr. 20, 388).

The ALJ further noted that Dr. Wade's January 2018 examination report included normal findings, including that Plaintiff was appropriately dressed, had adequate grooming and hygiene, was fully oriented, with logical and coherent speech, and although she was somewhat inattentive to tasks, she put forth a good effort (Tr. 24-25, 372). Also, Dr. Wade described Plaintiff as cooperative, and documented that her interactions with the examiner were appropriate (Tr. 26, 372). The ALJ remarked that other than Dr. Wade's observation that Plaintiff was irritable towards her mother, made poor eye contact, had a flat affect, and a nervous mood, as well as poor eye contact recorded by Plaintiff's neurologist, over the course of treatment during the period at issue, the evidence does not establish that Plaintiff had significant problems interacting with any of her providers or parents during appointments (Tr. 26).

The ALJ also considered Plaintiff's medication regimen. 20 C.F.R. § 416.929(c)(3)(iv). As the ALJ noted, Plaintiff began taking Keppra in September 2017 after experiencing a seizure (Tr. 20, 24, 418, 422, 425). Thereafter, she told Dr. Yoder that her ADHD medications did not work as well since she began taking Keppra; however, by March 2018, during a neurological follow-up, Plaintiff reported she no longer experienced side effects from Keppra (Tr. 20, 24, 409-12). In March 2019, Plaintiff told her neurologist that she had some issues with her emotions and questioned whether or not her problems were related to Lamictal (Tr. 24, 401-02, 404). In August 2019, Plaintiff's father reported she had a seizure after she forgot to take her medication for 24 hours, but she now had an alarm set as a reminder (Tr. 24-25, 399).

15

The ALJ considered the mother's comments about Plaintiff's fine motor skills (Tr. 25, 63-64). The ALJ noted that Dr. Bultemeyer's notes indicate that Plaintiff's cranial nerves were intact, and her sensation, gait, and motor skills were within normal limits (Tr. 25, 359, 401-02, 405, 409, 418). Also, in May 2019, Plaintiff reported she played Pokémon Go on her cellphone (Tr. 25, 396-97), which suggests that she was not experiencing difficulties with fine motor skills. Thus, the ALJ concluded that there was no documentary evidence of significant motor neurological deficits, grip strength deficits, or significantly decreased manipulative abilities (Tr. 25).

In addition, the ALJ also considered Plaintiff's May 2017 IEP, but found that it was not entirely consistent with Plaintiff's parents' statements and testimony (Tr. 24). The documents show that Plaintiff possessed good writing skills and sometimes needed redirection in psychology and economics, but she was responsive, actively participated in classroom discussions, and rarely used any accommodations (Tr. 21, 306-09, 313-14, 316-17). The IEP described Plaintiff's strengths as her ability to develop her own ideas for her interest, and that she was an "avid reader" (Tr. 24, 306-07). The IEP further noted that Plaintiff no longer had behavioral issues, she handled herself very maturely and respectfully, and she was a "joy" to have in class (Tr. 21, 306-09, 313-14, 316-17). In addition, the IEP reflects Plaintiff's participation in theatre activities and Indiana Academic Spell Bowl while in high school (Tr. 26, 42-43, 306-09).

As the foregoing demonstrates, the ALJ properly assessed Plaintiff's parents' statements and testimony in light of the other evidence of record. The ALJ concluded that the evidence of record did not establish greater limitations than those included in the RFC finding. (Tr. 22, 27). A claimant's own subjective statements cannot establish disability. 20 C.F.R. § 416.929(a)

(statements about your pain or other symptoms will not alone establish that you are disabled). As explained above, the ALJ appropriately analyzed the statements and testimony provided by Plaintiff's parents as the Commissioner's regulations direct her to do—crediting those that were supported by other evidence of record—and she sufficiently explained his findings in this regard. Thus remand is not required on this issue.

Next, Plaintiff's asserts that the ALJ erred in her consideration of evidence concerning migraines and seizures. With respect to migraines, the ALJ considered evidence from July 2016, which indicates that Plaintiff reported having throbbing headaches with pain in the frontal region, but without radiation (Tr. 18, 346). Dr. Yoder indicated that the headache was a "new problem," and prescribed Sumatriptan for classic migraines (Tr. 18, 346-47). At the hearing, Plaintiff's mother testified that when Plaintiff feels a migraine coming on, either she or Plaintiff's father gives Plaintiff Sumatriptan, and then Plaintiff goes into her room with blackout curtains and sleeps (Tr. 18, 61-62).

The ALJ considered the mother's testimony that Plaintiff has at least one migraine per month, with some lasting for several days in a row, but noted that the medical evidence is not entirely consistent with the testimony (Tr. 18, 387). As the ALJ observed, Plaintiff denied having headaches in January 2018, and she reported that her headaches had not increased in August 2018 (Tr. 18, 385, 387, 392). In February 2019, Plaintiff told Dr. Yoder that she had "intermittent migraines" (Tr. 18, 387). The ALJ concluded that migraines were not a severe impairment under the regulations at step two of the sequential evaluation (Tr. 18). 20 C.F.R. § 416.920(c). The ALJ explained, however, that even if migraines were found to be a severe impairment, the RFC finding accommodated any resulting limitations by restricting her concentration to two-hour segments at

unskilled task complexity (Tr. 18, 22).

Likewise, the ALJ discussed medical evidence concerning seizures. As the ALJ explained, neurology treatment notes from September 2017 indicate that Plaintiff had a seizure mid-sentence, lasting for about one and one-half minutes, where she stopped talking, made a weird sound, fell backwards, and she bit her tongue (Tr. 27, 422-23, 425). Dr. Bultemeyer prescribed Keppra, and the record reflects that Plaintiff's seizures remained fairly well controlled when she was compliant with Keppra (Tr. 27, 408, 412, 425). In March 2018, Plaintiff denied having any side effects from Keppra (Tr. 20, 24, 412). In August 2018, Plaintiff remained seizure free; however, she reportedly had a small seizure in September 2018 (Tr. 27, 408). In February 2019, Dr. Yoder recorded that Plaintiff was "doing well" (Tr. 20, 388). In March 2019, Plaintiff reported no seizures, and neurology notes reflect she was alert and fully oriented, her cranial nerves were within normal limits, she retained full motor strength in all four extremities, finger-to-nose testing was bilaterally intact, and her gait and sensation were within normal limits (Tr. 27, 401). Records from May 2019 and August 2019 indicate that Plaintiff had a seizure after she forgot to take her epilepsy medications (Tr. 27, 396, 400). At the end of August 2019, the father indicated that Plaintiff was "back on track" and had an alarm set up to remind her to take her medications (Tr. 400).

The ALJ also considered the opinions of the State agency medical consultants, M. Ruiz, M.D., and J. Sands, M.D., who reviewed Plaintiff's records at the initial and reconsideration levels of administrative review, respectively (Tr. 27, 86-89, 101-03). The ALJ found Dr. Sands' opinion to be persuasive because it limited Plaintiff to never climbing ladders ropes/scaffolds and occasional balancing, while also limiting her to avoiding all exposure to working at unprotected heights, operation of motorized vehicles, and working around or operation of dangerous

machinery with moving parts or sharp blades (Tr. 27, 86-89, 101-03). The ALJ's RFC finding adopted Dr. Sands' assessed limitations because they are consistent with Plaintiff's history of seizures, as described in the decision, and they provide for the safety of Plaintiff and others (Tr. 27).

The ALJ thus appropriately considered the evidence and included in the RFC finding those limitations that were supported by the record. Plaintiff has failed to establish that additional RFC limitations were warranted. Accordingly, remand is not appropriate on this issue.

Plaintiff argues that the ALJ did not consider her alleged inability to sustain full-time work when assessing the RFC. In particular, she argues that it was "unreasonable for the ALJ to rely on the general opinion" of Dr. Unversaw "to justify that [Plaintiff] can sustain full-time employment for the first time in her life."  Plaintiff's argument fails on a number of grounds.

First, it is important to note at the outset that RFC is not a medical opinion, but an administrative assessment based on medical and nonmedical evidence that the ALJ is uniquely responsible for making once the matter is before him or her. *See Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995) (citations omitted) (explaining that, in formulating a claimant's residual functional capacity, an ALJ "must consider the entire record, including all relevant medical and nonmedical evidence . . . . That is, the SSA need not accept only physicians' opinions.").

Second, the ALJ did make findings about Plaintiff's ability to sustain work. In the "Applicable Law" section of the decision, the ALJ explained that the RFC is an individual's "ability to do physical and mental work activities on a sustained basis despite limitations from her impairments" (Tr. 17). The ALJ cited to 20 C.F.R. § 416.945 and SSR 96-8p, which make clear

that the RFC measures the claimant's capacity to perform work "on a regular and continuing

basis." As SSR 96-8p further explains, a "regular and continuing basis" means "8 hours a day, for

5 days a week, or an equivalent work schedule." 1996 WL 374184. Implicit in the RFC

determination is the conclusion that a claimant can perform and sustain work activity at the

determined level. *See Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006) (holding that an RFC

implicitly contains a finding that claimant is able to work an eight-hour day).

Third, is undisputed that Plaintiff had no past work history (Tr. 41, 90). The ALJ

considered this factor in the decision (Tr. 27). But the ALJ also considered other non-medical

evidence, including Plaintiff's education history, daily activities, and reported hobbies (including

knitting, baking, photography, playing Pokémon Go, and her past participation in theatre and

Indiana Academic Spell Bowl) (Tr. 18-27, 45, 306). C.F.R. § 416.929(c)(3)(i).

Fourth, Dr. Unversaw's "Mental Residual Functional Capacity Assessment" form

evaluated the extent to which Plaintiff could be expected to "perform sustained work activities"

and provided a narrative statement with an opinion on Plaintiff's mental RFC limitations (Tr.

88-90). As discussed above, the ALJ found Dr. Unversaw's mental RFC assessment to be

persuasive because of its overall consistency with Plaintiff's history and clinical findings (Tr. 23).

Ultimately, however, it was up to the ALJ to determine Plaintiff's RFC. 20 C.F.R. §§ 416.945,

416.946(c). The record contains substantial evidence supporting the ALJ's RFC finding.

Additionally, the ALJ presented the supported RFC in a hypothetical question to the

vocational expert at the hearing (Tr. 71-72). The vocational expert testified that an individual with

Plaintiff's RFC and vocational factors (i.e., age, education, and work experience) could perform

work existing in significant numbers in the national economy (Tr. 72). The vocational expert's

testimony provides substantial evidence supporting the ALJ's conclusion at step five that Plaintiff was not disabled within the meaning of the Act (Tr. 27-29). Accordingly, the decision will be affirmed.

Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby AFFIRMED.

Entered: June 29, 2021.

s/ William C.  Lee
William C. Lee, Judge
United States District Court